IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

STEVE and CONNIE GARRISON,

        Plaintiffs,

v.                                                      No. CIV 05-890 BB/ACT

(Members of N.M. BAR), KENNETH
WILSON, PAMELA DOBBS, and KAREN
L. PARSONS, in their individual and official
capacities,

and

LINCOLN COUNTY SHERIFF'S
DEPUTIES, CHRIS WOODS, ROBERT
SHEPARD, R.J. CRANSTON, E.J.
FOURATT, BRENT HILL, TOM WOLF,
and JOHN DOE, in their individual and
official capacities

        Defendants.

## MEMORANDUM OPINION AND ORDER

      THIS MATTER comes before the Court on Defendants Lincoln County Deputies Chris Woods, Robert Shepard, R.J. Cranston, E.J. Fouratt, Brent Hill, and Tom Wolf's ("Defendants") September 25, 2006 motion for summary judgment (Doc. No. 90). Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendants' motion for summary judgement should be GRANTED in part and DENIED in part.

### Standard for Reviewing a Motion for Summary Judgment

     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating a motion for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999). However, it is "not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988).

Summary judgment is inappropriate if disputes remain as to material facts. *See James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* Further, "[A] jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995).

### Background

On August 20, 2002, Clinton Garrison ("Clinton"), accompanied by his parents, Steve and Connie Garrison ("Plaintiffs"), appeared before New Mexico State District Court Judge Parsons in a juvenile court proceeding. *See* Compl., ¶ 11, (Doc. No. 1); Pl.'s Resp. to Defs.' S.J. Mot., Ex. 10 - Juvenile Summons (Doc. No. 109). At the outset of the proceeding, Judge Parsons ordered Clinton's lawyer to leave the bar upon learning that he was not licensed to practice law in New Mexico. *See* Compl., ¶¶ 11-14; Defs.' S.J. Mot., Ex. A, ¶ 5 - Wolf Aff.; Ex B, ¶ 6 -

Cranston Aff.. In response, Clinton's father, Steve, told Judge Parsons that Clinton and he were leaving since they would not be represented by the counsel of their choice. *See* Compl., ¶ 15; Wolf Aff., ¶ 6; Cranston Aff., ¶ 6. Judge Parsons instructed Steve and Clinton to remain in the courtroom and warned that they would be held in contempt if they left. *See* Cranston Aff., ¶ 6. Disregarding these warnings, Steve and Clinton walked out. *Id*.

This prompted Judge Parsons to order Deputies Wolf, Cranston, and Fouratt to arrest Steve and his son. *See* Cranston Aff., ¶ 8. Accordingly, Deputies Fouratt and Cranston arrested Steve and escorted him to a side office just outside the courtroom where he was handcuffed, patted down, and detained. *Id.* Deputy Fouratt remained with Steve in the side office, while Deputy Cranston returned to the courtroom. *Id*.

The parties' accounts of the incident diverge at this juncture.

Defendants state that as Steve and his son left the courtroom, they were followed by Connie and a group of unruly spectators. *See* Wolf Aff., ¶ 7. According to Defendants, Judge Parsons ordered Deputy Wolf to stop the group of individuals from leaving the courtroom, and to effectuate this order, he stood in front of the courtroom entrance. *See id.* at ¶¶ 8-9; Cranston Aff., ¶ 10. At this point, Defendants state that Connie, who was standing in front of Deputy Wolf, "raised her right arm towards him," and, "in response . . . Wolf caught her right wrist and held it for a minute or so, without applying any force and with the sole intention of preventing her aggressive action." *See* Wolf Aff., ¶¶ 10-11. Judge Parsons subsequently ordered that the group be allowed to leave the courtroom, and Deputy Wolf released Connie's arm and moved out of the way. *See id.* at ¶ 14; Cranston Aff. at ¶ 11. Defendants further state that Deputies Wolf and Cranston were the only officers in the courtroom during the time in question, and that Deputies

Shepard, Hill, and Woods were not even in the courthouse at the time of this incident. Ex. C, ¶ 6 - Shepard Aff.; Ex. D, ¶ 6 - Hill Aff.; Ex. E, ¶ 4 - Woods Aff.  Defendants conclude their version of events by stating that Connie never complained to anyone at the courthouse that she had sustained physical injuries. *See* Defs.' S.J. Mot., Shepard Aff., ¶ 10; Hill Aff. ¶ 10.[1]

Plaintiffs recount a very different set of circumstances.  They state that, aside from Steve and Clinton, Judge Parsons never ordered Deputy Wolf to stop any individuals from leaving the courtroom, and certainly did not order him to detain Connie.  *See* Pl.'s Resp. to Defs.' S.J. Mot., Ex. 15, ¶ 6 - Connie Garrison Aff.; Ex. 16, ¶ 13 - Winter Aff.; Ex. 18, ¶ 14 - Martin Aff.; Ex. 19, ¶¶ 9-10 - Matthew Garrison Aff.; and Ex. 20, ¶ 10 - Daniel Garrison Aff.; Ex. 21, ¶ 10 - Jackson Aff..  Rather, without any provocation, Deputy Wolf grabbed both of Connie's wrists - not just her right one - as she was lining up to leave the courtroom.  *See* Connie Garrison Aff., ¶¶ 5, 6, 9, and 14; Winter Aff., ¶¶ 13, 15, and 17; Pl.'s Resp. to Defs.' S.J. Mot., Ex. 17, ¶¶ 8-9 - Lichtenwalter Aff.; Martin Aff., ¶¶ 10, 12, and 14; Matthew Garrison Aff., ¶¶ 6, 8, and 9; Daniel Garrison Aff., ¶¶ 6, 8, and 9; Jackson Aff., ¶¶ 7, 9, and 10.  Additionally, Plaintiffs state that Deputy Wolf did not release Connie immediately after Judge Parson stated that she was not to be arrested.  Instead, Deputy Wolf let her go only after Deputy Cranston repeated Judge Parsons' order to him.  *See* Connie Garrison Aff., ¶ 15-16; Winter Aff., ¶¶ 23-24; Martin Aff., ¶¶ 20-21; Matthew Garrison Aff., ¶¶ 14-15; Jackson Aff., ¶¶ 16-17.

---

[1] Defendants' affidavits are in conflict on this issue.  Specifically, Deputies Shepard and Hill each swear in their affidavits that they did not observe Plaintiff complaining of physical injury. *See* Shepard Aff., ¶ 10; Hill Aff., ¶ 10.  However, the Incident Report attached to Defendant Cranston's sworn affidavit states that soon after her altercation with Deputy Wolf, Plaintiff asked to speak with the clerk of the court and said "she was going to file charges against Wolf for hurting her arm." Cranston Aff., Ex. A.

Further, Plaintiffs have attached multiple eye-witness affidavits, which state that, with the exception of Deputy Fouratt, all of the named Defendants were in the courtroom at the time of the incident. *See* Connie Garrison Aff., ¶ 13, 16 (Deputy Woods among deputies in courtroom); Winter Aff., ¶¶ 11-12 (Defendant Shepard among deputies in courtroom); Lichtenwalter Aff., ¶ 9; Matthew Garrison Aff., ¶ 10; Jackson Aff., ¶ 11. As noted above, Plaintiffs agree that Deputy Fouratt remained in the side office with Steve during the altercation between Deputy Wolf and Connie.

Moreover, Plaintiffs state that Connie did notify court personnel that she was injured. In fact, she contends that she told Deputy Wolf that he was hurting her and later sought the clerk of the court to inform him of her injuries. *See* Connie Garrison Aff., ¶¶ 13, 22; Winter Aff., ¶ 19; Lichtenwalter Aff., ¶ 13; Martin Aff., ¶ 15; Matthew Garrison Aff., ¶ 20. Finally, Plaintiffs have attached fourteen pages of medical records, beginning on August 20, 2002, and ending on September 25, 2006, that related to shoulder injuries she allegedly sustained during the incident in question. *See* Pl.'s Resp. to Defs.' S.J. Mot., Ex. 22 - Medical Records.

## Claims

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting under color of state law. 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Accordingly, the first step in a § 1983 claim is to identify the specific constitutional rights allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140. In this regard, Plaintiffs assert that Deputy Wolf violated Connie's Fourth

Amendment rights by using excessive force to seize her. *Graham*, 490 U.S. at 388. Plaintiffs also allege that the remaining Deputy Defendants should be held liable because they failed to intervene to prevent his alleged use of excessive force.[2] *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).

## Discussion

Defendants argue that they are entitled to summary judgment based on absolute immunity or, in the alternative, qualified immunity.

### I.     Defendants are not entitled to absolute immunity

The ordinary rule is that qualified - and not absolute - immunity is sufficient to protect law enforcement officers in the conduct of their official duties. *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986). Initially, Defendants argue that this ordinary rule does not apply. Specifically, Defendants state that they are entitled to a form of absolute immunity known as quasi-judicial immunity because Judge Parsons ordered them to seize Connie. The Defendants bear the burden of showing that their actions are entitled to such absolute protection. *Burns v. Reed*, 500 U.S. 478, 486 (1991).

#### A.     The law of quasi-judicial immunity

The analysis of the Defendants' argument begins with the fundamental principle that judges are entitled to absolute immunity from damages for their judicial conduct. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). This absolute immunity afforded to judges has been extended to apply to quasi-judicial conduct of various persons who are not judges in three situations: 1)

---

[2] Plaintiffs acknowledge that Steve was arrested pursuant to Judge Parsons' order and, therefore, have dismissed their Fourth Amendment claim related to his arrest. *See* Pl.'s Resp. to Defs.' S.J. Mot, p. 11.

where such persons are themselves "integral parts of the judicial process," *see Brisco v. LaHue*, 460 U.S. 325, 333 (1983) (witnesses), *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20, 430-31 (1976) (grand jurors and prosecutors);  2) where officials engage in quasi-judicial decision making, *see, e.g., Butz v. Economou,* 438 U.S. 478, 512-513 (1978) (federal hearing officers)*; Wilson v. Kelkhoff*, 86 F.3d 1438, 1443-44 (7th Cir. 1994) (parole board); and 3) where non-judicial officers perform acts pursuant to a direct judicial order, *see, e.g., Valdez v. City of Denver*, 878 F.2d 1285, 1287-88 (10th Cir. 1989), *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir.1988) (concluding deputy clerk entitled to absolute immunity from suit for issuing an arrest warrant at the direction of the assistant circuit judge); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.1981) (stating that court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction").

In situations like the current one, where law enforcement officers are charged with using excessive force in enforcing a judge's order, the application of quasi-judicial immunity is analyzed under the third of these prongs. *See, e.g.,  Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001).  Importantly, the circuit courts that have engaged in this analysis are divided on whether courtroom security officers should be protected by quasi-judicial immunity.  The Tenth Circuit has held, in *Martin v. Board of County Commissioners*, that officers charged with employing excessive force to execute a bench warrant were *not* entitled to absolute immunity.  909 F.2d 402, 405 (10th Cir. 1990).  The Tenth Circuit reasoned that, because an order to take someone into custody carries with it an implicit order not to use unreasonable force, the judge's order would not shield the officers from a claim challenging the manner in which they enforced the order.  *Id*.  Thus, the Tenth Circuit concluded that an officer is not entitled to quasi-judicial immunity when

the challenged conduct concerns the manner in which the judge's order was enforced, rather than the order itself. It held, "[A]bsolute immunity does not protect [court security personnel] from damage claims directed not to the conduct prescribed in the court order itself but to the manner of its execution."[3] *Martin*, 909 F.2d at 405.

The Seventh Circuit has concluded likewise. Specifically, in *Richman*, fourteen deputies "attacked" a litigant, "forced him to the floor," and "sat on and handcuffed him" in response to the judge's order that he be "restrained." 270 F.3d at 433-34. The litigant subsequently filed a § 1983 lawsuit against the deputies alleging that their actions violated his Fourth Amendment rights. The Seventh Circuit held that the deputies' challenged conduct was not "specifically directed" by the judge, and that the plaintiff was thus challenging the "manner in which [the deputies] enforced the judge's order," and not the judge's order itself. *Id*. Like the Tenth Circuit, the Seventh Circuit therefore held that the deputies were not entitled to quasi-judicial immunity. *Id*. at 436.

Standing on the other side of the split is the Eight Circuit's decision in *Martin v. Hendren*, 127 F.3d 720 (8th Cir. 1997). The facts in that case mirrored those faced by the Tenth and Seventh Circuits. Specifically, after a *pro se* litigant in traffic court refused to sit down, the judge ordered a police officer to remove her from the courtroom. After a brief struggle, the litigant was "struck in the face by [the officer's] arm or elbow." Then, after the judge ordered that the plaintiff be handcuffed, the officer "flipped [the litigant] face down onto the floor,

---

[3] In reaching this conclusion, the court distinguished it's earlier holding in *Valdez v. City of Denver*, that law enforcement officers enforcing a contempt order were entitled to quasi-judicial immunity for claims of false arrest and imprisonment. 878 F.2d 1285 (10th Cir. 1989). Specifically, the Tenth Circuit explained that, in *Valdez*, the claim was not directed at the manner in which the judge's order was executed, but instead at the conduct expressly prescribed by the order.

8

handcuffed her, pulled her to her feet by the handcuffs and her hair, and led her out of court." *Id*. at 721. The Eight Circuit rejected the Tenth Circuit's distinction between the issuance of the order itself and the manner of its execution, and held that the alleged impropriety of the officers' acts - using excessive force to effectuate the seizure - did not strip the acts of their quasi-judicial character. *Id*. at 721-22. In reaching this conclusion, the Eighth Circuit relied on the Supreme Court's statement in *Mireles* that "if judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id*. at 722 (quoting *Mireles*, 502 U.S. at 12-13). Although the *Mireles* opinion did not address quasi-judicial immunity, the Eight Circuit found its reasoning applicable, stating: "Absolute quasi-judicial immunity would afford only illusory protection if it were lost the moment an officer acted improperly." *Id.*

This Court will follow the Tenth Circuit's approach to the extension of quasi-judicial immunity. In addition to being bound by Tenth Circuit precedent, s*ee United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990), this Court finds the Tenth Circuit's reasoning more persuasive. In particular, this Court finds that the Eight Circuit's decision is based on an over-reading of the Supreme Court's decision in *Mireles*. In *Mireles*, the plaintiff challenged the judge's order directly, as opposed to the manner in which the order was executed, by suing the judge. Consequently, the holding in *Mireles* is limited to the proposition that the applicability of absolute judicial immunity cannot turn on the correctness of the judge's decision when the challenged conduct is the judge's own decision making.[4]

---

[4] The difficulty with the Eight Circuit's decision to transplant this logic to the quasi-judicial context was recognized in Judge Lay's dissenting opinion, which stated, "Under the majority's reasoning, if a judge orders a bailiff to remove a litigant from the courtroom, and the

Thus, under applicable Tenth Circuit precedent, an officer is not entitled to quasi-judicial immunity when the challenged conduct concerns the manner in which the order is enforced, rather than the order itself. In practice, this means the law enforcement officer's adherence to the specific orders of the judge marks the boundary for labeling the act "quasi-judicial." *See Martin*, 909 F.2d at 404-405.

### B. Defendants have not carried their burden of showing that Deputy Wolf's seizure of Connie is entitled to absolute immunity

Given this required analysis, the content of Judge Parson's order is critical. If Defendants could show that there was no variance between the order issued by Judge Parsons and the manner in which Deputy Wolf executed it, they might be able to succeed on their quasi-judicial immunity argument. However, the question of whether Judge Parsons even issued such an order is disputed by the parties. Defendants have submitted affidavits stating that Judge Parsons ordered Deputy Wolf to detain a group of individuals attempting to leave the courtroom, while Plaintiff has submitted opposing affidavits stating that Judge Parsons did not issue such an order. Since Defendants are required to show that Judge Parsons not only issued an order, but that the order specifically prescribed the conduct Plaintiffs challenge, this dispute of material fact precludes Defendants from showing that absolute, as opposed to qualified, immunity is required in this situation. Thus, Defendants are not entitled to quasi-judicial immunity.[5] *See Dudley v. Johnson*,

---

bailiff decides that the most expeditious way to accomplish this order is to bash the litigant in the head with a baseball bat, the bailiff would enjoy absolute immunity." *Hendren*, 127 F.3d at 723 (Lay, J., dissenting)

[5] This conclusion is consistent with the Supreme Court's "functional" approach to questions concerning the application of common-law tort immunities in § 1983 actions. Specifically, the Supreme Court has explained, "Immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219,

1995 U.S. Dist. LEXIS 18156 (E.D. La. 1995) (bailiff who used physical force against litigant to restore order in courtroom not entitled to absolute immunity if he was not acting pursuant to direct judicial order).

## II.     Defendants are not entitled to qualified immunity - except for Deputy Fouratt

Defendants alternatively argue that they are entitled to summary judgment because they are protected by qualified immunity. "When a § 1983 defendant raises the defense of qualified immunity on summary judgment, the burden shifts to the plaintiff. . . ." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). "To prevail . . . a 'plaintiff must show that (1) the official violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established when the alleged violation occurred.'" *MIMICS, Inc. v. Village of Angel Fire*, 394 F.3d 836, 841 (10th Cir. 2005). The burden shifts to the defendant only if the plaintiff successfully carries his two-part burden. *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). At that point, the defendant bears the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity. *Id.*; *see also* Fed. R. Civ. P. 56(c). "When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be properly denied." *Olsen*, 312 F.3d at 1312 (quoting *Salmon v. Schwartz*, 948 F.2d 1131, 1136 (10th Cir. 1991) (internal quotations omitted).

---

227 (1988) (emphasis in original). In this regard, it should be noted that qualified, rather than absolute, immunity is the rule for law enforcement officers of all kinds, including secret service officers charged with protecting the President. *See Mally*, 475 U.S. at 340-41, *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curium). The fact that court security officers exercise their duties in the courtroom does not justify applying a different rule of liability for their conduct since their function is virtually identical to other law enforcement officials.

### A. Deputy Wolf is not entitled to qualified immunity because there are disputed issues of material fact concerning the reasonableness of his use of force

At the time of the altercation between Connie and Deputy Wolf, the Supreme Court had clearly established that a government official violates a citizen's Fourth Amendment right to be free from excessive force if the official's actions were not "'objectively reasonable' in light of the facts and circumstances confronting him." *Graham*, 490 U.S. at 397. While the test for reasonableness defies "precise definition or mechanical application," it involves a case-specific fact-sensitive inquiry of such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id*. Because the reasonableness inquiry overlaps with the qualified immunity analysis, "a qualified immunity defense [is] of less value when raised in defense of an excessive force claim." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Quezada v. County of Bernalillo*, 944 F.2d 710, 718 (10th Cir. 1991)). Further, since the reasonableness analysis is highly fact dependent, a court "will not approve summary judgment in excessive force cases - based on qualified immunity or otherwise - if the moving party has not quieted all disputed issues of material fact." *Allen v. Muskogee*, 119 F.3d 837, 840-42 (10th Cir. 1997).

Critically, in this case, there are a plethora of disputed issues of material fact. First, as set forth above, the parties dispute whether Judge Parsons ordered Deputy Wolf to detain a group of

12

individuals, including Connie, who were trying to leave the courtroom. Second, the parties dispute whether Connie raised her arm in an aggressive manner toward Wolf. Defendants contend that she did, while Plaintiffs state that she did not. Third, the parties dispute whether Wolf grabbed both of Connie's wrists or only her right one. Fourth, and relatedly, the parties disagree about how much force Wolf used against Connie. Defendants state that Wolf "never applied any force to her wrist, but only held it to prevent her aggressive action." Plaintiffs, on the other hand, contend that Wolf used excessive force in detaining Connie and have submitted medical records allegedly related to this incident. Fifth, the parties dispute why and how quickly Wolf released Connie's wrist(s). Defendants claim that Wolf released Connie as soon as Judge Parsons ordered him to do so. Plaintiffs state that Wolf only let her go after Deputy Cranston repeated the order. As noted above, summary judgment is inappropriate if disputes remain as to material facts. *See James Barlow Family Ltd. P'ship*, 132 F.3d at 1319. Given this array of disputed issues of material fact, this Court is precluded from granting Defendants' motion for summary judgment based on qualified immunity with respect to Deputy Wolf. *Allen*, 119 F.3d at 840-42.

### B.  Aside from Deputy Fouratt, the remaining Deputy Defendants are not entitled to qualified immunity for their alleged failure to intervene

Plaintiffs allege that the remaining Deputy Defendants violated Connie's Fourth Amendment rights by failing to intervene to prevent Deputy Wolf from using excessive force. To begin, Defendants do not dispute that clearly established law at the time of Connie's alleged injuries allowed recovery for an officer's failure to prevent excessive force. *See Mick*, 76 F.3d at 1136 ("Tenth Circuit precedent clearly established . . . that a law enforcement official who fails to

13

intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983."); *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir. 1984) (officers may be liable for failure to intervene if they had the opportunity to intervene but nevertheless failed to do so), *rev'd on other grounds sub nom., City of Lawton v. Lusby*, 474 U.S. 805 (1985). Rather, Defendants takes issue with the evidence presented by Plaintiffs in support of this claim.

Preliminarily, it should be noted that the parties agree about the whereabouts of two of the remaining Deputy Defendants during Deputy Wolf's alleged use of excessive force. First, the parties agree that Deputy Fouratt remained with Steve in the side office outside the courtroom and was not present at any time during Deputy Wolf's seizure of Connie. Thus, Deputy Fouratt cannot be held liable for a failure to intervene.

The parties also agree that Deputy Cranston was in the courtroom when Deputy Wolf detained Connie and that he observed the seizure at short-range. In particular, Defendants acknowledge that, after detaining Steve in a side office, Deputy Cranston reentered "the courtroom and observed Deputy Wolf, who was at the entrance of the courtroom, being confronted by approximately 12-15 family members," including Connie. Cranston Aff., ¶ 12. Thus, it is not disputed that Deputy Cranston was present during Deputy Wolf's alleged exercise of excessive force. Additionally, Plaintiffs have submitted multiple affidavits from persons in the courtroom indicating that Deputy Cranston had an opportunity to intervene had he chosen to do so. For example, in her affidavit, Connie states, "All of the other officers in the courtroom were just standing there watching [Deputy Wolf], and doing nothing." Connie Garrison Aff., ¶ 12. Given this evidence, the Court is precluded from granting summary judgment to Deputy Cranston on Plaintiff's failure to intervene claim.

The parties dispute whether the remaining Deputy Defendants - Shepard, Hill, and Woods - were present in the courtroom during Wolf's alleged use of excessive force. Plaintiffs contend that they were and have submitted supporting affidavits to this effect. And, as stated above, Plaintiffs have also submitted evidence, in the form of eye-witness affidavits, indicating that these deputies had an opportunity to intervene and stop or prevent Deputy Wolf's alleged use of excessive force. Defendants, on the other hand, have submitted affidavits from each of these deputies stating that they were not even in the courthouse, much less the courtroom, during the incident in question. Given the dispute of material fact regarding the presence of the remaining Deputy Defendants, the Court cannot grant summary judgment to Defendants on Plaintiff's failure to intervene claim. *Allen*, 119 F.3d at 840-42.

## Conclusion

Based on the foregoing, Defendants' motion for summary judgment will be GRANTED in part and DENIED in part.

## ORDER

Based on the foregoing memorandum opinion, Defendants' motion for summary judgment (Doc. No. 90) is hereby GRANTED in part and DENIED in part.

DATED May 1, 2007.

_____
UNITED STATES DISTRICT JUDGE
BRUCE D. BLACK

**Attorneys:**

**For Plaintiffs (appearing** *pro se***)**
Steve and Connie Garrison

**For Defendant**s
Carlos M. Quinones